UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KELLY ANDRADE,                        )
                                      )
              Plaintiff,              )
       v.                             )         CIVIL ACTION
                                      )         NO. 14-12153-JGD
CAROLYN W. COLVIN, Acting             )
Commissioner, Social Security         )
Administration,                       )
                                      )
              Defendant,              )

## MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS REGARDING DENIAL OF SOCIAL SECURITY BENEFITS

September 30, 2015

DEIN, U.S.M.J.

### I.  INTRODUCTION

The plaintiff, Kelly Andrade ("Andrade"), has brought this action pursuant to sections

205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), in order to

challenge the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying her claims for Social Security Disability Insurance ("SSDI") and

Supplemental Security Income ("SSI") benefits.  The matter is before the court on the

"Plaintiff's Motion for Judgment" (Docket No. 19), by which Andrade is seeking an order

reversing the Commissioner's decision and granting her claims for benefits, or in the

alternative, remanding the matter to the Social Security Administration for further

administrative proceedings.  It is also before the court on the "Motion to Affirm the

Commissioner's Decision" (Docket No. 24), by which the Commissioner is seeking an order

upholding her determination that Andrade is not disabled within the meaning of the Social

Security Act, and is therefore not entitled to benefits.  At issue is whether the Administrative

Law Judge ("ALJ"), in reaching his decision that Andrade was not disabled, erred by finding that

the plaintiff's seizure disorder and migraine headaches did not constitute "severe" impair-

ments, and that Andrade had the residual functional capacity to perform her past relevant work

as a baker.  Also in dispute is whether the ALJ committed reversible error by relying on a

vocational expert's response to a hypothetical question, which allegedly failed to account for all

of the plaintiff's mental and physical limitations.  For all the reasons described below, this court

finds that the ALJ committed no error and that his decision was supported by substantial

evidence.  Therefore, the plaintiff's motion for judgment is DENIED, and the defendant's motion

to affirm is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

   Andrade was born on April 24, 1973, and was 36 years old at the time she applied for

Social Security benefits.  (Tr. 255, 262).  She is a high school graduate and completed two years

of college, although she did not earn a degree.  (Tr. 44-45, 309).  Andrade is divorced and has

two grown children, ages 18 and 21.  (Tr. 68, 551).  Her 21 year old daughter continues to live at

home, and assists Andrade by performing chores and driving the plaintiff around.  (Tr. 68, 72-

73).

   During the time period between 1997 and 2009, Andrade held jobs as a personal care

attendant, a finisher in a donut shop, and a baker in a donut shop.  (Tr. 45-49, 306).  She was

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. ___."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 15.

last employed for 3 ½ years as a baker at a Dunkin Donuts.  (Tr. 402).  The record reveals that

the plaintiff left that job after she witnessed the murder of her boyfriend, was placed in a

witness protection program, and relocated to a new city.  (Tr. 69-70, 349, 402-03).  She claims

that she has been disabled from working since that time due to back pain, seizures, complica-

tions stemming from gastric bypass surgery, including hernias and an iron deficiency, depress-

sion, anxiety and migraine headaches.  (See Tr. 50-67, 305, 330).

## Procedural History

On September 1, 2009, the plaintiff filed applications for SSI and SSDI, claiming that she

had been unable to work since July 22, 2009 due to depression.  (Tr. 255-68, 305).  She later

alleged disability due to migraine headaches, symptoms of anemia, and a seizure disorder as

well.  (Tr. 114-15, 318, 330).  Her applications were denied initially in March 2010, and upon

reconsideration in December 2010.  (Tr. 100-02, 108-10).  The plaintiff then requested and was

granted a hearing before an ALJ, which took place on October 18, 2012.  (Tr. 117-18, 133-38).

Andrade, who declined the opportunity to obtain counsel, appeared and testified at the

hearing.  (Tr. 35-36, 40-82, 86-94).  The ALJ also elicited testimony from a vocational expert

("VE"), who described the plaintiff's vocational background based on her past work experience,

and responded to two hypothetical questions that were designed to determine whether jobs

exist in the national and regional economies for an individual with the same age, educational

background, work experience and residual functional capacity ("RFC") as the plaintiff.  (Tr. 83-

86).  Andrade contends that the first hypothetical question did not accurately reflect all of her

physical and mental limitations, and that the ALJ committed reversible error when he relied on

the VE's response to that question to support his conclusion that the plaintiff was not disabled.

As detailed below, however, this court concludes that the question was appropriate, and that no such error occurred.

On April 5, 2013, the ALJ issued a decision denying the plaintiff's applications for benefits. (Tr. 12-29). Thereafter, Andrade obtained counsel and filed a request for review of the ALJ's decision by the Social Security Appeals Council. (Tr. 5-11). On March 20, 2014, the Appeals Council denied the plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review. (Tr. 1-3). Accordingly, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### The ALJ's Decision

The ALJ concluded that from July 22, 2009 through the date of his decision on April 5, 2013, Andrade "ha[d] not been under a disability, as defined in the Social Security Act," which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1 and Finding #7; Tr. 15, 28). See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision that Andrade was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-14; Tr. 17-28).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). If so, the

claimant is automatically considered not disabled and the application for benefits is denied.

See id.  In this case, the ALJ found that Andrade had not engaged in such activity since July 22,

2009, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 17).  Therefore, he

proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an

"impairment or combination of impairments which significantly limits [her] physical or mental

ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is

deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F.3d at

5.  Here, the ALJ determined that Andrade suffered from a number of severe impairments,

including "iron deficiency and B12 deficiency secondary to malabsorption status post gastric

bypass[;]" low back pain secondary to mild levoscoliosis; depression; and anxiety.  (Dec. Finding

#3; Tr. 17-18).  Although he acknowledged that the record contained evidence of additional

impairments, including recurrent incisional hernias, a history of seizures and migraine head-

aches, and other conditions that required Andrade to undergo surgery, the ALJ found that each

of those impairments was "non-severe."  (Tr. 18).  The plaintiff challenges this conclusion, and

contends that the ALJ erred by failing to find that her seizure disorder and migraine headaches

were severe within the meaning of the Social Security regulations.

Because the ALJ determined that Andrade suffered from a number of severe impair-

ments, he proceeded to step three in the sequential analysis.  The third inquiry is whether the

claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1

of the Social Security regulations, in which case the claimant would automatically be found

disabled.  See Seavey, 276 F. 3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At this

step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not

meet or medically equal any of the listed impairments.  (Dec. Finding #4; Tr. 19).  Accordingly,

his analysis continued.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such

that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  In the instant

case, the ALJ determined as follows with respect to the plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant
> has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) [2] except that she could occasionally
> climb, stoop, kneel, crouch, or crawl.  The claimant could understand and
> remember simple and complex instructions, and could concentrate for
> two-hour periods over an eight-hour day on simple and complex tasks.
> The claimant could interact appropriately with coworkers and supervisors
> but should avoid work that requires close coordination or teamwork with
> coworkers.  The claimant should also avoid work that requires frequent
> contact with the general public.  The claimant could adapt to changes in
> the work setting.

(Dec. Finding #5; Tr. 21).  This is the same RFC that was included in the ALJ's first hypothetical

question to the VE.  (See Tr. 84-85).  The plaintiff contends that the ALJ's assessment of her RFC

was not supported by substantial evidence because the ALJ did not properly evaluate her

subjective complaints of pain and other symptoms, failed to credit the opinions of a non-

examining source regarding the extent of the plaintiff's mental health impairments, and failed

to consider the combined impact of her impairments on her ability to function and perform

---

[2] 20 C.F.R. §§ 404.1567(b) and 416.967(b) define "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

basic work activities.  This court disagrees and finds, for all the reasons described below, that

the ALJ's handling of these matters was proper.

In reaching his conclusion regarding the claimant's RFC, the ALJ followed well-

established procedures.  He first considered all of Andrade's symptoms and the extent to which

those symptoms were consistent with the objective medical evidence and other evidence in the

record.  (Dec. 7-11; Tr. 21-25).  Accordingly, the ALJ reviewed the plaintiff's medical records,

which consisted of records covering the time period from July 30, 2002 through February 5,

2013.  (See id.).  He also considered the opinions of medical and mental health professionals

who reviewed the available records and assessed the plaintiff's limitations, as well as

statements that the plaintiff had made at the hearing regarding her symptoms and the extent

to which those symptoms interfered with her ability to carry out day-to-day activities.  (Dec. 9-

10; Tr. 23-24).  Because the ALJ found that Andrade's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, he went on to determine

whether her subjective statements about the limiting effects of her symptoms were credible in

light of the entire record.  (See Dec. 7, 11-12; Tr. 21, 25-26).  The ALJ concluded that "the

claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely credible for the reasons explained in this decision."  (Dec. 11-12; Tr.

25-26).

After explaining the basis for his RFC determination, the ALJ relied on the VE's testimony

to determine that Andrade was capable of performing her past relevant work as a baker.  (Dec.

Finding #6; Tr. 27-28).  Therefore, the ALJ concluded that she "ha[d] not been under a disability,

as defined in the Social Security Act, from July 22, 2009, through the date of [his] decision[.]"

(Dec. Finding #7; Tr. 28).  Because the ALJ found that Andrade was capable of performing her past work and was therefore not disabled, he had no need to consider the fifth and final inquiry in the sequential analysis, which asks whether, given the claimant's RFC, education, work experience and age, the claimant has the ability to perform other work that exists in the national and regional economies.  See Seavey, 276 F.3d at 5.

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III.   ANALYSIS

### A.   Standard of Review

By her complaint in this action, Andrade is seeking judicial review of the Commissioner's "final decision" pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act").  Section 205(g) of the Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a re-hearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955

F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained,

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." The [Commissioner] may (and, under [her] regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.  We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez

v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's

function is a narrow one limited to determining whether there is substantial evidence to

support the [Commissioner's] findings and whether the decision conformed to statutory

requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981).

The Commissioner's decision must be affirmed, "even if the record arguably could justify a

different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v.

Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts[.]'"  Musto v. Halter, 135 F. Supp.

2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per

curiam)) (internal citations omitted).  "Thus, if the ALJ made a legal or factual error, the court

may reverse or remand such decision to consider new, material evidence or to apply the correct

legal standard." Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

**B.**   **Plaintiff's Challenge to the Severity Determination**

Andrade's initial challenge to the ALJ's decision involves his finding at step 2 of the sequential evaluation process.  Specifically, Andrade contends that the Commissioner's decision to deny her claims for SSI and SSDI benefits must be reversed or remanded because the ALJ erroneously concluded that her seizure disorder and migraine headaches did not constitute "severe" impairments.  (Pl. Mem. at 6-8).  "At Step 2, the claimant has the burden of proving, through objective medical evidence, that her impairments are severe."  Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007).  "An impairment . . . is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  Id. (quoting 20 C.F.R. § 404.1521(a)).  Here, the ALJ found that both Andrade's seizure activity and her migraine headaches were controlled with a regimen of prescription medication, and imposed no more than a minimal limitation on her ability to perform basic work activities.  (Dec. 4; Tr. 18).  Because his decision on this issue was supported by substantial evidence in the record, this court finds that it must be upheld.

**History of Seizure Disorder**

As the ALJ acknowledged in his written decision, the record confirms that Andrade has a history of seizure disorder dating back to 2010.  (See Dec. 4; Tr. 18, 441, 508-09, 605).  However, the ALJ found, based on a review of the medical records, that "the most recent confirmed seizure activity occurred in October of 2010[,]" and that Andrade's seizures have been "well-controlled with a regimen of prescription medication" since that time.  (Dec. 4; Tr.

18).  Thus, he concluded that, "[i]n the absence of more frequent seizure activity during the time period in question," her impairment was "non-severe" for purposes of the disability analysis.

There is some evidence that, in contrast to the ALJ's finding, Andrade experienced seizures after October 2010.  For example, in December 2011, during an appointment with James C. Chingos, MD, the physician who treated Andrade's iron deficiency, the plaintiff stated that she had experienced three seizures over the course of the past year.  (Tr. 541).  In addition, her medical records demonstrate that she suffered a "breakthrough seizure" in or around October 2012.  (Tr. 610).  Nevertheless, there is no medical evidence which shows that Andrade experienced seizures with any frequency or regularity.  Instead, the records from Andrade's medical and mental health providers support the ALJ's finding that the plaintiff's seizure activity was well controlled with appropriate medication, and that she was able to remain "stable" on her regimen of anti-seizure medication.  (Tr. 578; see also Tr. 605-06 (progress notes from January 31, 2013 visit with primary care physician reporting that Andrade "has had no further seizures" since the breakthrough seizure in 2012); Tr. 614 (progress notes from September 26, 2012 visit with primary care physician stating that plaintiff "has not had any recent breakthrough seizures with her current treatment"); Tr. 616-17 (progress notes from June 4, 2012 visit with primary care physician making no mention of seizure activity).  The plaintiff's hearing testimony further confirms the conclusion that her seizures were controlled with appropriate medication, and that she had no need for neurological treatment once the medications had been adjusted properly.  (See Tr. 61-64).  "If an impairment can be controlled by treatment or medication, it cannot be disabling."  Brown v. Barnhart, 390 F. 3d 535, 540 (8th

Cir. 2004) (quotations and citations omitted).  Accordingly, there is substantial support for the

ALJ's conclusion that Andrade's seizure disorder imposed no more than a minimal limitation on

her ability to work, and was thus not "severe" within the meaning of the Social Security

regulations.

### History of Migraine Headaches

The plaintiff's history of migraine headaches presents a closer question. In support of his

conclusion that Andrade's migraines were non-severe, the ALJ found that "the record does not

reflect evidence of limitations stemming from this alleged impairment that would cause the

claimant more than a minimal work related limitation."  (Dec. 4; Tr. 18).  He also determined

that "the claimant's migraine headaches have been largely amenable to management with a

regimen of prescription medication, including prophylactic and abortive medicines such as

Imitrex and Fiorcet."  (Id.).  While this court might have reached a different conclusion, it finds

that the ALJ's decision on this matter must be upheld.  Moreover, as detailed infra, any error

was harmless.

The plaintiff argues that the ALJ's finding regarding the severity of her migraine

headaches is inconsistent with the hearing testimony and records from Diane Patrick, MD, her

primary care physician.  (Pl. Mem. at 6-7).  The record establishes, however, that migraines

were not a significant problem at the outset of the relevant period.  For example, Andrade

denied having headaches when questioned by Dr. Chingos in July 2010 and December 2011.

(Tr. 541, 550).  There is also evidence in the record that while the migraines increased over

time, they were "largely amenable to management with prescription medicine," as the ALJ had

found, and that Andrade and her doctors continued to believe that conventional treatment

continued to be appropriate.  Thus, during the hearing, Andrade testified that she experiences migraines approximately three times a week, and that they last between an hour and an hour and a half.  (Tr. 79).  She also testified that her doctor was trying new migraine medications because her medications could lose their effectiveness over time, and had to be adjusted.  (See Tr. 78-79).  Dr. Patrick's records confirm that while Andrade reported more severe migraines in September 2012, her medication was adjusted to address the situation.  (See Tr. 613-14).  The amount of medication for preventive as well as abortive treatment was reassessed, although not significantly modified, in October 2012 (Tr. 611) and January 2013.  (Tr. 605-06).  Neverthe-less, by all reports, the migraines were not medically intractable, and were considered amenable to treatment.  (See, e.g., Tr. 606).

The record also supports the ALJ's finding that the record fails to show that Andrade's migraines caused anything more than "minimal" limitations on her ability to work.  In particular, there is nothing in the medical records that indicates that Andrade's headaches caused any significant limitations or interfered with her capacity to carry out day-to-day activities.  Moreover, as detailed below, there is evidence that Andrade could, in fact, perform her day-to-day activities.  "It is not enough for Plaintiff to be diagnosed with certain impair-ments: Plaintiff must provide evidence that these impairments 'significantly limit[ ] [her] physical or mental ability to do basic work activities.'"  Grady v. Astrue, 894 F. Supp. 2d 131, 141 (D. Mass. 2012) (quoting 20 C.F.R. § 404.1520(c)).  Because Andrade has not shown how her migraines significantly limit her ability to work, the ALJ's finding on this matter was appropriate.

**Harmlessness**

Even if the ALJ arguably erred by failing to find that Andrade's migraine headaches or seizure disorder constituted a severe impairment, this court finds that any such error was harmless.  Because the ALJ found that the plaintiff had at least one severe impairment, he was required to consider all of her impairments, "including [any] medically determinable impairments that [were] not 'severe,'" when assessing her RFC at step 4 in the analytical process.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Here, the ALJ acknowledged that obligation, and considered "all allegations of symptoms arising from both severe and non-severe impairments in determining [Andrade's] residual functional capacity[.]"  (Dec. 5; Tr. 19; see also Dec. 7, 9-11, Tr. 21, 23-25 (stating that ALJ "considered all symptoms," and discussing evidence relating to migraine headaches and seizures, in connection with assessment of plaintiff's RFC)).  Therefore, any error resulting from his failure to find that those impairments were severe at step 2 would not warrant a ruling in favor of the plaintiff.  See Noel v. Astrue, C.A. No. 11-cv-30037-MAP, 2012 WL 2862141, at *6 (D. Mass. Jul. 10, 2012) (finding that any error arising from ALJ's conclusion that plaintiff's anxiety was not a severe impairment was harmless in light of ALJ's obligation to consider all of plaintiff's impairments in assessing his RFC); Perez v. Astrue, C.A. No. 11-30074-KPN, 2011 WL 6132547, at *4 (D. Mass. Dec. 7, 2011) (finding that any error at step 2 was harmless where "ALJ explicitly considered 'all symptoms,' both severe and non-severe, in assessing Plaintiff's residual functional capacity"), and cases cited.

### C.    Plaintiff's Challenge to the RFC Assessment

The plaintiff also argues that the Commissioner's decision to deny her claims for SSI and SSDI benefits must be reversed because the ALJ's assessment of her mental and physical RFC was not supported by substantial evidence, and was "contrary to the record as a whole." (Pl. Mem. at 8). As described above, the ALJ determined that Andrade maintained the RFC to perform light work with some additional mental limitations, and only an occasional ability to climb, stoop, kneel, crouch and crawl. (Dec. Finding #5; Tr. 21). For the reasons that follow, this court finds that the ALJ's analysis was supported by the record, and that no error occurred.

### Adequacy of the ALJ's Credibility Determination

In support of her challenge to the ALJ's finding that she retained the RFC to perform a range of light work, Andrade contends that the ALJ erred in his assessment of her credibility. (Pl. Mem. at 8-10). While the ALJ found that Andrade's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" he concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible[.]" (Dec. 11-12; Tr. 25-26). The plaintiff argues that this finding was not based on substantial evidence because the ALJ failed to apply the so-called "Avery factors" in deciding not to credit Andrade's complaints of disabling symptoms. (Pl. Mem. at 8-10). Although the ALJ did not specifically list the Avery factors in his written decision, the ALJ explained in detail why he did not find credible Andrade's testimony asserting limitations greater than he found. (Dec. 12-13; Tr. 26-27). This court finds that the ALJ fulfilled his obligation to consider the relevant factors in connection with his determination of Andrade's credibility, and that no error occurred.

"The regulations recognize that a person's symptoms may be more severe than the objective medical evidence suggests.  Therefore, the regulations provide six factors (known as the Avery factors) that will be considered when the applicant alleges pain" or other symptoms.[3] Makuch v. Halter, 170 F. Supp. 2d 117, 126 (D. Mass. 2001) (internal punctuation, emphasis, and citation omitted).  These are:

> (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities.

Rohrberg v. Apfel, 26 F. Supp. 2d 303, 308 (D. Mass. 1998) (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)).  While the ALJ must *consider* each of these factors, there is no requirement that he make specific findings regarding each of the factors in his written decision.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing *Avery* factors as factors that the Commissioner "will consider" in evaluating subjective complaints of pain and other symptoms).  See also Rand v. Barnhart, 357 F. Supp. 2d 361, 368 (D. Mass. 2005) ("While it may be argued that it would have been more helpful for the hearing officer explicitly to outline the *Avery* factors in making his credibility determination, it is sufficiently clear from the record that he thoroughly questioned [the claimant] according to those guidelines at the hearing").

---

[3] "While the *Avery* factors only discuss 'pain,' Social Security Ruling 96-7p makes it clear that the factors also apply to 'other symptoms.'"  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 n.3 (D. Mass. 2010) (quoting SSR 96-7p, 1996 WL 374186, at *3).

In the instant case, the ALJ satisfied his obligation to consider the relevant factors. During the hearing, and again in his written decision, the ALJ considered Andrade's statements regarding the nature, intensity, persistence and limiting effects of her pain and other symptoms. For example, but without limitation, the ALJ considered Andrade's testimony regarding her back pain, including her description of the nature and extent of her pain. (Dec. 10; Tr. 24, 55-57). He also considered testimony regarding complications that have arisen as a result of her gastric bypass surgery, such as an iron deficiency that causes fatigue, and recurrent incisional hernias that cause pain and restrict Andrade's ability to lift and bend. (Dec. 10; Tr. 24, 51-53, 77). Furthermore, despite finding that Andrade's seizure disorder and migraine headaches were not severe impairments, the ALJ questioned Andrade about the frequency of her seizures, as well as the frequency, persistence and intensity of her migraines. (Tr. 61-64, 79). He also considered her testimony regarding the nature of those impairments, and her efforts to obtain treatment for those impairments. (See Dec. 10; Tr. 24, 53, 62-66). With respect to the plaintiff's mental impairments, the ALJ considered the plaintiff's reports of anxiety and stress, especially in connection with her placement in the witness protection program, and he questioned Andrade about her efforts to obtain mental health treatment. (Dec. 10; Tr. 24, 90).

In addition to eliciting testimony on all of these points, the ALJ reviewed in detail Andrade's medical records, and considered not only the complaints that the plaintiff had made to various physical and mental health professionals, but also the medical findings and treatments she received. (See Dec. 5-13; Tr. 19-27). Significantly, the ALJ noted after this review, "the record does not indicate that [Andrade] has made any persistent complaint of side effect

from medication or that medical providers have seen a need to make any significant change in the type or dose of medication." (Dec. 12-13; Tr. 26-27).  As described above, the ALJ credited Andrade's claims to some extent, and found that her impairments "could reasonably be expected to cause the alleged symptoms[.]"  (Dec. 11; Tr. 25).  However, the ALJ found that the plaintiff's complaints about the extent of her symptoms and resulting limitations were undermined by the objective medical evidence, the generally conservative nature of her treatment, including her "scant and entirely conservative history of mental health treatment," the reasons for leaving her most recent job as a baker (i.e., to join a witness protection program), and her ability to carry out various day-to-day activities.  (See Dec. 12-13; Tr. 26-27). These findings are amply supported by the record.

Finally, the record illustrates that the ALJ considered all of the available evidence regarding Andrade's activities of daily living.  As described in his written decision, the ALJ considered the plaintiff's testimony regarding her daily activities, including her statements that she does not like to leave the house, has stopped driving due to her seizure activity, spends most of her time watching television or communicating with others on the computer, and relies on her daughter to drive her around and take care of most household chores.  (Dec. 5, 10; Tr. 19, 24).  The ALJ found that Andrade's testimony was inconsistent with other evidence in the record, which "indicate[s] that the claimant is capable of a broader range of daily activities." (Dec. 5; Tr. 19).  In particular, but without limitation, he relied on records from a psycho-diagnostic interview and consultative examination that was performed by Richard Vinacco, Psy.D. in March 2010.  (See Dec. 5, 8; Tr. 19, 22).  According to Dr. Vinacco, Andrade reported that she was able to perform various activities of daily living such as reading, shopping, food

preparation, personal finance activities, and personal care tasks.  (See Tr. 402).  As detailed

below, there is evidence in the record, in the form of the plaintiff's own statements, that her

capacity to undertake such tasks did not change.

The plaintiff argues that in rendering his finding regarding Andrade's ability to perform

daily activities, the ALJ disregarded statements that she made at the hearing concerning her

need to alternate among sitting, standing and lying down, her inability to drive, her inability to

use public transportation or go shopping, and her reluctance to leave her home and interact

with the public.  (Pl. Mem. at 9-10).  According to the plaintiff, that testimony demonstrates

that she was incapable of performing full time work on a regular, continuing basis.  (Id.).  Thus,

she contends that the ALJ's failure to credit her testimony amounted to reversible error.

Andrade's assertion that the ALJ erred in this regard lacks merit.  While the plaintiff's

hearing testimony may have supported her claim of disabling limitations, that claim is

contradicted by other evidence contained in the record.  For instance, in an initial Disability

Report that was filed with the Social Security Administration, Andrade claimed that she was not

able to work due to depression, but she did not mention any other limitations that would

interfere with her ability to perform daily activities or carry out gainful employment, and she

responded "No" to the question whether her "illnesses, injuries or conditions cause you pain or

other symptoms[.]"  (Tr. 305).  Subsequently, in or around the summer of 2010, Andrade

completed an updated Disability Report in which she indicated that she had developed no new

physical or mental limitations, and had experienced no changes in her conditions or daily

activities since the time of the last Report.  (Tr. 316-17).  Moreover, in or around February or

March of 2011, the plaintiff completed another Disability Report in which she indicated that

19

despite her migraines and seizure disorder, she remained "able to take care of [her] personal needs for the most part." (Tr. 333). Accordingly, Andrade's own representations to the agency undermine her testimony regarding the extent of her limitations. Furthermore, as the ALJ emphasized in his written decision, during the consultative examination that was performed by Dr. Vinacco in March 2010, Andrade denied having any difficulty with personal care, including showering, dressing, and grooming herself. (Tr. 402). She further stated that she enjoyed watching television, listening to music and reading on occasion, and that she could sit, bend, and lift 10 pounds without hurting herself. (Id.). Moreover, Andrade reportedly told Dr. Vinacco that she could cook and prepare meals, shop for food, plan budgets, maintain checkbooks and pay bills on time. (Id.). Although she stated that she could not run or stand for long periods of time, she attributed those limitations to "shortness of breath" rather than to any of her alleged disabilities. (Id.). Thus, this court concludes that the ALJ's finding with respect to Andrade's ability to perform activities of daily living was based on substantial evidence in the record, and supports his assessment of the plaintiff's credibility. See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("evidence of daily activities can be used to support a negative credibility finding").

### Adequacy of the ALJ's Mental RFC Assessment

Andrade also takes issue with the ALJ's conclusion that she retained the mental capacity to perform a range of light work, and she suggests that the ALJ should have adopted the opinion of Michael Maliszewski, Ph.D., an agency consultant. (See Pl. Mem. at 10-12). On March 16, 2010, Dr. Maliszewski reviewed the plaintiff's medical records and completed an assessment of her mental RFC. (Tr. 406-21). Therein, Dr. Maliszewski determined that Andrade

was suffering from depression and anxiety, and he opined that she had mild restrictions on her ability to carry out activities of daily living, moderate restrictions on her ability to maintain concentration, persistence and pace, and marked difficulties in social functioning.  (Tr. 416).  In particular, Dr. Maliszewski found that Andrade had moderate limitations on her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek, interact appropriately with the public and respond appropriately to changes in the work setting.  (Tr. 419-20).  He further concluded that she had the capacity to perform only simple tasks, "would perform better in a more independent job role," and "would be capable of performing concrete tasks in a normal, supportive and structured setting."  (Tr. 421).  The ALJ specifically considered Dr. Maliszewski's assessment, as well as the assessment of another agency consultant, Russell Phillips, Ph.D., who affirmed Dr. Maliszewski's assessment upon reconsideration of Andrade's claims.  (Dec. 12 Tr. 26; see also Tr. 422).  However, the ALJ determined that their opinions were entitled to "little weight" for a number of reasons, including that Dr. Maliszewski's assessment "appears to be internally inconsistent."  (Dec. 12, Tr. 26).  This court finds that his decision on this matter was appropriate.

In his written decision, the ALJ explained that he had given little weight to the opinions of Drs. Maliszewski and Phillips because they were "not consistent with the record as a whole." (Id.).  In particular, the ALJ determined that the consultants' opinions regarding the extent of Andrade's mental limitations were "inconsistent with the claimant's scant and entirely conservative history of mental health treatment, as well as Dr. Vinacco's consultative

examination findings." (Id.).  These findings are supported by substantial evidence in the record.

As the ALJ noted in his decision, the record contains very little by way of formal mental health treatment.  (See Dec. 12; Tr. 26).  Although Andrade sought psychiatric treatment beginning in October 2012, her records show that during a counseling session in December 2012, she stated that therapy was "not for me." (Tr. 569-73, 577).  They also show that she attended a counseling session the following month, in January 2013, at which time she was advised to follow up in another two weeks.  (Tr. 578).  However, there is no indication that she attended any further counseling sessions or obtained any additional treatment from a mental health professional.  (See Tr. 569-78).  In fact, during the hearing, the plaintiff admitted that she had only met with a therapist on a couple of occasions.  (Tr. 90).  The limited nature of Andrade's mental health treatment supports the ALJ's decision to reject the opinions of Drs. Maliszewski and Phillips regarding the extent of her mental health limitations.  See Irlanda Ortiz, 955 F.2d at 769 (viewing gaps in treatment "as 'evidence'" that claimant's symptoms were not disabling).

The record also supports the ALJ's conclusion that the agency consultants' opinions were inconsistent with the findings of Dr. Vinacco.  As described above, Dr. Vinacco met with the plaintiff in March 2010 to perform a psychodiagnostic interview and consultative examination.  (Tr. 401-04).  Significantly, during the interview, Andrade reported that she had left her last job as a baker due to her participation in the witness protection program rather than as a result of her physical and mental impairments.  (Tr. 402).  She also reported that while she was working, she experienced no problems with her coworkers or supervisors, was able to

perform her job responsibilities well, and was able to handle constructive criticism.  (Id.).

Furthermore, as detailed previously, Andrade told Dr. Vinacco that she was capable of

performing a variety of activities of daily living.  (Id.).  Following his examination, Dr. Vinacco

reported that Andrade was calm and cooperative, displayed no psychomotor agitation or

retardation, was able to sit through the testing without any apparent difficulty, had well

modulated speech, and denied any suicidal or homicidal ideation.  (Tr. 404).  He further

reported, with respect to Andrade's mental status, that the plaintiff "was alert, oriented to

person, place, time, and purpose, as well as future oriented. Her thought processes were logical

and concrete, thought content organized and goal-directed. She did not evidence delusions or

hallucinations."  (Id.).  Dr. Vinacco diagnosed Andrade with dysthymia, anxiety, sleep issues and

"Rule out Medical Issues."  (Id.).  As described above, "the resolution of conflicts in the

evidence and the drawing of conclusions from such evidence are for the [Commissioner]."  The

ALJ was entitled to credit Dr. Vinacco's assessment over the opinions of the state agency

consultants.  See Irlanda Ortiz, 955 F. 2d at 769 (explaining that "the resolution of conflicts in

the evidence and the drawing of conclusions from such evidence are for the [Commissioner]").

Accordingly, his decision on that matter is entitled to deference on appeal.

## Combination of Impairments

In a further effort to undermine the ALJ's RFC assessment, Andrade argues that the ALJ

improperly viewed her impairments separately instead of considering their combined impact on

her ability to perform work-related activities.  (Pl. Mem. at 12-13).  "SSA regulations and case

law mandate that the ALJ consider the combined effect of a claimant's impairments at each

step of the sequential analysis."  Snow v. Barnhart, C.A. No. 05-11878-RGS, 2006 WL 3437400,

at *6 (D. Mass. Nov. 29, 2006).  The record establishes that the ALJ satisfied that requirement in this case.

As described in his written decision, the ALJ specifically recognized that in order to determine whether Andrade was disabled, he was required to evaluate whether she was able "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment *or combination of impairments* that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1; Tr. 15).  He also stated, at step 4 in the analytical process, that his assessment of Andrade's RFC was "[b]ased on the record as a whole, including all of the claimant's severe impairments, *both singly and in combination*[.]"  (Dec. 13, Tr. 27).  The ALJ's comprehensive discussion of Andrade's medical records, which he described in connection with his RFC determination, demonstrates "adequate consideration of the combined effect of [the] claimant's impairments despite the fact that the impairments are discussed individually rather than collectively."  Snow, 2006 WL 3437400, at *6.  Accordingly, there is no merit to the plaintiff's claim of error on this issue, and this court finds that substantial evidence supports the ALJ's finding as to Andrade's RFC.  See Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 591-92 (6th Cir. 1987) (the fact that ALJ's decision was based on a review of the entire record, and that the ALJ specifically referred to "a combination of impairments" demonstrated that the ALJ fulfilled his obligation to consider the combination of impairments, notwithstanding "the fact that each element of the record was discussed individually").

**D.**   **Plaintiff's Challenge to the VE Testimony**

The plaintiff's final challenge to the ALJ's decision involves his conclusion that Andrade was capable of performing her past relevant work as a baker. In rendering his decision on this matter, the ALJ relied on the VE's response to his first hypothetical question. (See Dec. 14, Tr. 28; see also Tr. 84-85). The plaintiff contends that this finding was not supported by substantial evidence because that hypothetical question did not accurately convey the claimant's physical and mental RFC. (Pl. Mem. at 14-15). Again, this court finds that the plaintiff's argument is unpersuasive.

"In order to be substantial evidence, . . . the opinion of the vocational expert must be in response to a hypothetical that accurately describes the claimant's limitations." Sousa v. Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011). Here, the plaintiff has not shown that the hypothetical question at issue did not satisfy this requirement. As Andrade acknowledges, the first hypothetical question that was posed to the VE incorporated the RFC that the ALJ ultimately adopted in his written opinion. (Compare Tr. 84-85 with Dec. Finding #5, Tr. 21). For the reasons discussed previously, that assessment of Andrade's abilities was based on substantial evidence. Because Andrade has not raised any new arguments in support of her assertion that the RFC did not accurately reflect her limitations, she has not established any error on the part of the ALJ, and her motion to reverse or remand the matter to the Social Security Administration must be denied.

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, the "Plaintiff's Motion for Judgment" (Docket No. 19)

is DENIED and the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 24)

is ALLOWED.

/ s / Judith Gail Dein

Judith Gail Dein
United States Magistrate Judge
